# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BROADKILL BEACH BUILDERS, LLC, )
A Delaware Limited Liability Company, )
    Plaintiff, )
     )
     )
    v. )    C.A. No.: S23L-09-009 RHR
     )
WILSON FRAMPTON and )
CAROL FRAMPTON, )
    Defendants. )

Submitted: March 24, 2025
Decided: June 30, 2025

## MEMORANDUM OPINION

*Upon Consideration of Plaintiff Broadkill Beach Builders, LLC's Motion for Summary Judgment*,
**GRANTED**,

*Defendants Wilson Frampton and Carol Frampton's Motion in Limine*,
**MOOT**.

Dean A. Campbell, Esq., LAW OFFICE OF DEAN CAMPBELL, P.A., Milton, Delaware, *Attorney for Plaintiff Broadkill Beach Builders, LLC*.

Richard E. Berl, Jr., Esq. and Angelica Mamani, Esq., HUDSON JONES JAYWORK & FISHER, LLC, Lewes, Delaware, *Attorneys for Defendants Wilson Frampton and Carol Frampton*.

**Robinson, J.**

Wilson and Carol Frampton (collectively, the "Framptons") hired Broadkill Beach Builders, LLC ("Broadkill") to make repairs to a rental house they owned in Broadkill Beach, Delaware. Upon receiving their final bill, the Framptons refused to pay the 20% management fee called for in the contract due to their mistaken belief that the fee had been applied to their previous invoices, and because they believed Broadkill overcharged them. Broadkill filed a complaint seeking a mechanic's lien and asserting claims of breach of contract and unjust enrichment. The Framptons filed counterclaims for breach of contract, consumer fraud, and deceptive trade practices. Broadkill also filed a motion in limine seeking to exclude an expert report that the Framptons obtained. Broadkill now moves for summary judgment. This court finds that Broadkill is entitled to summary judgment, and that the Framptons' counterclaims fail, both on their individual merits and because they are barred by the voluntary payment doctrine to the extent that they seek recovery of previous payments. This decision renders the motion in limine moot.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Broadkill is a general contractor that primarily serves the community of Broadkill Beach. After noticing some water damage to soffits on the house, the Framptons hired Broadkill to repair the damage. Wilson Frampton signed a letter prepared by Broadkill that states, in its entirety:

Dear Mr. Frampton,

We do hereby propose to repair a rotten roof, fascia[,] and soffit as needed on a time and material [basis] [p]lus 20%. Cost will be $50.00 per man hour. A lift will be provided as [a] major percentage of work is high, this is at the owners['] cost. Dumpster will be provided at owners['] cost. Owner will be invoiced every two weeks.

Thank you,

Allen S. Davis[1]

Broadkill began making repairs on October 31, 2022 and soon discovered additional damage. The water damage extended from the roof to the first floor. The parties agreed that the terms of the contract would govern the costs of further repairs. Broadkill eventually removed and replaced the siding, repaired two decks, and installed a new roof. Between August 3, 2022 and March 29, 2023, Broadkill sent the Framptons six invoices for material and labor costs, ranging from $13,457.47 to $39,500.00. None of the invoices contained the 20% markup fee. After the work was "substantially complete" (the parties' briefings are inconsistent as to the exact date), Broadkill sent an invoice with the 20% markup fee totaling $30,153.58.[2] The Framptons, only then realizing that the markup had not been included in their previous invoices, refused to pay.[3] Broadkill filed its complaint and statement for mechanic's lien on September 12, 2023, asserting that the Framptons' refusal

---

[1] D.I. 29, Mot. for Summ. J., Ex. C.
[2] The parties both refer to this amount being due, but the invoice attached to the motion for summary judgment appears to state that 20% is $29,867.08.
[3] D.I. 29, Mot. for Summ. J., Ex. D at 60.

amounted to a breach of contract and that they were unjustly enriched as a result.[4]

Broadkill asks this court to enter judgment in its favor for $30,153.58 plus pre- and post-judgment interest, costs, and attorneys' fees. In response, the Framptons argue that they were overbilled and are therefore entitled to set-offs for money that was improperly collected.[5] The Framptons brought counterclaims for breach of contract, prohibited trade practices/consumer fraud, and deceptive trade practices. Broadkill moved for summary judgment.[6] At an office conference, the court suggested that the parties attempt to settle this dispute—pointing out that both parties seemed unaware that the repairs would be so extensive when they entered into a time and materials contract—but they were unable to reach an agreement.

## II.    THE PARTIES' CONTENTIONS

In support of their breach of contract counterclaim, the Framptons allege that Broadkill breached the contract by (1) overcharging, (2) failing to keep and provide a more detailed accounting of its costs, and (3) improperly calculating the management fee based on materials and labor "not utilized in construction."[7] In support of their counterclaims for consumer fraud and deceptive trade practices, the

---

[4] D.I. 1, Compl.

[5] D.I. 8, Def.'s Answer & Countercl. at 5.

[6] Broadkill subsequently filed a motion in limine which is rendered moot by this opinion. Summary judgment is appropriate irrespective of the admissibility of the discovery contested therein.

[7] D.I. 8, Def's Answer & Countercl. at 5.

Framptons assert that Broadkill intentionally concealed its management fee and repeat the allegations made in their breach of contract counterclaim.

In its motion for summary judgment, Broadkill contends that there is no dispute that the Framptons breached the contract and that each of the Framptons' counterclaims are meritless. In support of their first argument, Broadkill explains that the Framptons' failure to pay the final invoice clearly satisfied each of the elements of breach of contract: (1) an obligation, (2) a breach of the obligation, and (3) resulting damages.[8] Broadkill claims that the Framptons agreed to pay for "time and material plus 20%," and breached when they refused to pay the 20%.[9] In support of its second argument, Broadkill explains that the Framptons' counterclaims must fail for two reasons: (1) the counterclaims are insufficient on their individual merits, and (2) the Framptons failed to produce evidence supporting their overarching theory that they were overcharged (which is a prerequisite for each counterclaim). Broadkill argues that the Framptons' breach of contract counterclaim is meritless because their voluntary payments prevent them from recovering payments already made in the absence of fraud. For the deceptive trade practices counterclaim, Broadkill asserts that the Framptons lack standing because the Deceptive Trade Practices Act ("DTPA") extends only to claimants with "competing business

---

[8] D.I. 30, Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. at 8 (citing *River Valley Ingredients LLC v. American Proteins, Inc.*, 2021 WL 598539 (Del. Super. 2021)).
[9] *Id.*

interests," rather than consumers.[10] Finally, for the consumer fraud claim, Broadkill argues that (1) there is no evidence of fraud; (2) the Framptons' belief that they overpaid does not give rise to a claim for fraud; and (3) the voluntary payment doctrine is dispositive of subsequent attempts to assert fraud.

In response to the motion for summary judgment, the Framptons argue that the voluntary payment doctrine does not foreclose their breach of contract claim because they did not have "full knowledge of the facts."[11] The Framptons also assert that their defenses and counterclaims are supported by evidence, pointing primarily to a report by Cogent Building Diagnostics (the "Cogent Report") that was submitted after the discovery deadline (and that is subject to the motion in limine filed by Broadkill). Broadkill concedes that the Cogent Report's ultimate conclusion—that Broadkill's bill was higher than average—is accurate, so there is no need to address whether it should be considered here.[12] Next, the Framptons claim that there is an issue of fact regarding overbilling because the Broadkill admitted that it paid its laborers between $25.00 and $50.00 per hour when it requested $50.00 per hour in the contract. In defense of their deceptive trade practices counterclaim, the Framptons assert that they have standing under the DTPA because they own rental

---

[10] *Id.* at 11.

[11] D.I. 35, Def.'s Answering Br. in Opp'n to Pl.'s Mot. for Summ. J. at 8; *Id.* (citing *Envolve Pharmacy Sols., Inc. v. Rite Aid Hdqtrs. Corp.*, 2021 WL 140919 (Del. Super. Ct. Jan. 15, 2021)).

[12] D.I. 37, Pl.'s Reply Br. in Supp. of its Mot. for Summ. J. ("Reply Br.") at 4.

properties and, presumably, therefore possess the requisite competing business interests. In response to Broadkill's consumer fraud arguments, the Framptons only claim to have standing and reiterate their allegations that Broadkill misrepresented/inflated costs, concealed management fees, and generally overcharged for the project.

## III.   STANDARD OF REVIEW

Upon a motion for summary judgment, the movant must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[13] If the movant satisfies this burden, the burden shifts to the non-moving party to establish the existence of one or more genuine issues of material fact.[14] "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[15]

## IV.   DISCUSSION

The Framptons entered into an agreement with Broadkill and voluntarily paid each invoice, but refused to pay their final bill, which included the agreed-upon 20% management fee. None of the invoices contained any bills or fees that the parties had not previously discussed. The Framptons' failure to pay the management fee

---

[13] Super. Ct. Civ. R. 56(c); *see, e.g.*, *Quality Elec. Co., Inc. v. E. States Constr. Serv., Inc.*, 1995 WL 379125 (Del. 1995).

[14] Super. Ct. Civ. R. 56(e); *see, e.g.*, *Heasley v. Allstate Prop. & Cas. Ins. Co.*, 2022 WL 951259 (Del. Super. Mar. 28, 2022).

[15] *Kauffman v. Ocean View Produce, Inc.*, 2024 WL 5167336, at *2 (Del. Super. Ct. Dec. 19, 2024) (citing *Heasley*, 2022 WL 951259, at *2).

amounted to a breach of contract; summary judgment therefore hinges entirely upon whether there is an issue of fact regarding their counterclaims. The counterclaims fail on their individual merits, and, at least in part, because of the voluntary payment doctrine. Because the Framptons' counterclaims are meritless, they do not excuse their failure to pay the final bill.

### A. THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING BROADKILL'S BREACH OF CONTRACT CLAIM

A breach of contract occurs where there is a contractual obligation, a breach of that obligation, and damages.[16] Broadkill pleaded facts clearly demonstrating that it entered into an agreement with the Framptons and that the Framptons refused to abide by a term of that agreement to Broadkill's detriment. The Framptons do not contest these facts. There is therefore no genuine dispute as to whether they breached the agreement. While the Framptons offer various justifications for withholding final payment by way of their counterclaims, none of those counterclaims survive summary judgment, as explained below.

### B. THE FRAMPTONS' COUNTERCLAIMS FAIL ON THEIR INDIVIDUAL MERITS

The Framptons bring counterclaims for breach of contract, deceptive trade practices, and consumer fraud. For the following reasons, each counterclaim fails on

---

[16] *River Valley Ingredients LLC*, 2021 WL 598539, at *7.

its individual merits, leaving no issue of fact regarding Broadkill's breach of contract claim. Broadkill is entitled to summary judgment on these grounds alone.

1. Breach of Contract

In support of their breach of contract counterclaim, the Framptons allege that Broadkill (1) overbilled, (2) failed to keep and provide a detailed accounting, and (3) improperly calculated the management fee.

First, the overbilling argument fails because the Framptons have not identified any legal support for the proposition that a costly bill creates a cause of action for breach of contract. Under these facts, there appears to be none.[17]

Second, Broadkill did not breach the agreement by failing to provide a more detailed accounting because the Framptons were never entitled to *any* accounting. As Broadkill points out, in *Williams v. Lester* this court held that a homebuyer in a construction contract was not entitled to an accounting after the builder completed its project in excess of its estimated costs and billed the buyer accordingly.[18] The court dismissed the buyer's action with prejudice, reasoning that the buyer was not entitled to an accounting in this court or in the Court of Chancery because no

---

[17] *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("When conducting this [breach of good faith and fair dealing] analysis, we must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both.").
[18] 2023 WL 587943, at *1 (Del. Super. Ct. Jan. 25, 2023).

fiduciary relationship existed.[19] For the same reason, the Framptons are not entitled to an accounting and therefore cannot claim that Broadkill's failure to provide a *more detailed* accounting amounted to a breach of contract.

Finally, the Framptons never attempted to show that the management fee was improperly calculated, so no analysis is necessary to determine whether a genuine dispute of fact exists as to this claim.

Although the Framptons describe high markups and general dissatisfaction with the level of detail in Broadkill's records, they offer no legal support for their conclusions that Broadkill's pricing, accounting, and billing arrangement amounted to a breach of contract. Again, Broadkill concedes that their markups were high, as the Cogent Report suggests.[20] Broadkill's concession, in tandem with the absence of any legal support for this counterclaim, eliminates the possibility of a genuine dispute as to any material fact.

### 2. Consumer Fraud

The Delaware Consumer Fraud Act makes unlawful "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact" with intent to induce reliance.[21] The Framptons allege that

---

[19] *Id.* at *2.
[20] Reply Br. at 4.
[21] 6 *Del. C.* § 2513(a).

Broadkill engaged in consumer fraud by (1) misrepresenting costs of labor and materials, (2) concealing the management fee, and (3) generally overcharging.[22] The Framptons have not actually identified a single fraudulent statement, misrepresentation, or other wrongful act prohibited by the statute. To show that Broadkill misrepresented its costs, the Framptons only point to the provision of the contract requiring *them* to pay $50 per hour for labor. They have not demonstrated that Broadkill claimed to be paying that price. Contractors cannot be liable for consumer fraud for failing to alert customers that they mark up their prices. Likewise, there is no evidence showing that Broadkill concealed the management fee. The Framptons agreed to pay 20% and Broadkill billed them 20%. The only support they offer in favor of this argument is that Broadkill issued the fee after the initial invoices had been paid. As disagreeable as the Framptons may find Broadkill's billing structure, they were billed for exactly what they contracted for. Finally, as mentioned above, an unfavorable bill is not actionable. Without identifying a false statement or misrepresentation of any kind, the Framptons do not have a claim for fraud stemming from "overcharging," especially after making voluntary payments, as discussed below.

3. Deceptive Trade Practices

---

[22] It should be noted that the Framptons also initially claimed that Broadkill misrepresented the true condition of their property. This claim will not be addressed because it was never supported by arguments or evidence.

11

The Framptons do not have standing to bring a claim under the DTPA

because:

> The Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business. Unlike the Consumer Fraud Act, the DTPA is not intended to redress wrongs between a business and its customers." It is the Consumer Fraud Act . . . which provides a cause of action for a consumer.[23]

The Framptons were consumers under this contract. They did not mention any

interference with their business interests until Broadkill contested their standing.

Further, they cannot claim to be consumers for the purposes of the Consumer Fraud

Act while also seeking relief under the DTPA. The Framptons' final counterclaim is

therefore meritless because they do not have standing under the DTPA.

## C. THE VOLUNTARY PAYMENT DOCTRINE APPLIES

As a preliminary matter, it is necessary to briefly review the voluntary

payment doctrine, as the parties disagree about its breadth and relevance in this case.

This court illustrated the state of the doctrine in *Intermec IP Corp. v. Transcore, LP*:

> The voluntary payment doctrine bars recovery of "payment voluntarily made with full knowledge of the facts . . . ." It prevents a counterparty from claiming that a "misapprehension of . . . [its] legal rights and obligations" caused it to make payments by mistake. Conceptually, the voluntary payment doctrine derives from the intellection that ignorance of the law is no excuse. A contract party who pays its counterparty even though it had no contractual (legal) duty to do so may be found to have waived an argument in favor of recovering those payments. But the voluntary payment doctrine's negative treatment of mistakes of law

---

[23] *Ayers v. Quillen*, 2004 WL 1965866, at *5 (Del. Super. Ct. June 30, 2004) (citing *Grand Ventures Inc. v. Whaley*, 632 A.2d 63, 65 (Del.1993)) (internal citations omitted).

does not reach all mistakes. When "money [is] paid under a mistake of fact," even if the mistake is unilateral, the errant payment may be excused and recovery possible. In deciding whether the mistake is one of law or fact, courts look to the totality of the circumstances, considering "the circumstances under which [the payment] was made, the conduct of the payee and payor, and any other factors bearing on whether it would be unjust to permit the retention of the benefit or to order its restitution." The payor bears the burden of demonstrating its payments, though negligently made, nevertheless were the result of an excusable mistake of fact.[24]

At a minimum, the voluntary payment doctrine bars the Framptons' breach of contract counterclaim. It is unclear whether the doctrine applies to the Framptons' remaining two counterclaims, because those claims appear to seek punitive damages rather than recovery of "errant payments." Regardless, this ambiguity does not create an issue of fact because those claims fail on their individual merits. Even if those claims sought recovery of past payments, they would likewise be barred by the voluntary payment doctrine because they arise out of the same alleged acts of fraud, misrepresentation and concealment as the breach of contract claim. In other words, they rely on the existence of the same mistakes of fact.

Because the Framptons voluntarily paid each of the invoices from which they seek to recover set-offs, they bear the burden of demonstrating that their payments were the result of an excusable mistake. It is worth noting that the doctrine bars

---

[24] 2021 WL 3620435, at *15 (Del. Super. 2021) (citations omitted).

13

recovery of payments even where there was *never a legal duty to pay*. In this case, the Framptons had a clear legal duty to pay for "time and material . . . plus 20%."[25]

The only mistakes of fact that could be inferred from the Framptons' breach of contract claim are mistakes regarding (1) Broadkill's actual costs for materials and labor, and (2) the absence of the management fee in the Framptons' initial invoices. First, there was no excusable mistake of fact regarding costs of materials or labor. The Framptons have not identified any evidence suggesting that Broadkill claimed to be paying inflated prices for materials. Their argument that Broadkill misrepresented its labor costs in the language of the contract has already been addressed above. The court does not find their argument persuasive; any mistake stemming from the cited language would not be reasonable. Second, outside of making bare allegations, the Framptons have not attempted to demonstrate that Broadkill actually concealed its management fee. Although Broadkill's billing structure may be unusual, there is no evidence that it concealed the fee in any way. The parties explicitly agreed to a 20% fee and the Framptons do not dispute that they refused to pay it when it arrived. In the absence of any evidence to the contrary, the Framptons' mistaken belief regarding the management fee cannot be considered an excusable mistake of fact, and it does not overcome the application of the voluntary payment doctrine.

---

[25] D.I. Compl., Ex. A.

14

Because the Framptons have offered no valid support for their claims of inflated costs and concealment, they have failed to prove the existence of an excusable mistake of fact. The voluntary payment doctrine therefore applies. For that reason, the Framptons' breach of contract counterclaim fails, and, to the extent that their remaining counterclaims seek recovery of past payments, those claims fail as well.

### D. THE MOTION IN LIMINE IS MOOT

Broadkill filed a motion in limine to preclude the consideration the Cogent Report because it was produced several months after the discovery deadline. The Framptons claim that the only reason the report was late was that Broadkill's failure to respond to certain discovery requests delayed the preparation of the report. Because this decision grants Broadkill's motion for summary judgment, the motion in limine is moot. The court reviewed the body of the report and determined that it did not create a material issue of fact that would change the outcome of the motion for summary judgment. The report essentially confirms what the Framptons now surely know: a time and materials contract might have been appropriate for the initial minor repairs, but the contract should have been renegotiated once the repairs became more extensive.

## V. CONCLUSION

The Framptons entered into a contract with Broadkill and refused to abide by a term of that contract. This fact is undisputed. The Framptons' counterclaims reflect their dissatisfaction with the terms of the agreement and with Broadkill's billing practices, but do not overcome their willful acceptance of those terms or their voluntary payment. Accordingly, there is no genuine dispute as to whether the Framptons breached their agreement with Broadkill. Because the Framptons' counterclaims fail on their individual merits, and, at least in part, are barred by the voluntary payment doctrine, Broadkill's motion for summary judgment is **GRANTED**. Pre- and post-judgment interest is awarded at the legal rate; attorney fees are not awarded. The parties may submit a form of order consistent with this decision, if needed.

**IT IS SO ORDERED.**